945 So.2d 633 (2006)
Watisha TOMMIE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4502.
District Court of Appeal of Florida, Fourth District.
December 27, 2006.
*634 Tara A. Finnigan of Tara A. Finnigan, P.A., West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
After the appellant, Watisha Tommie, pled guilty to grand theft and was sentenced to four years in prison, she moved to withdraw her plea, claiming that she had been misinformed as to the length of prison sentence she could receive. The court denied the motion and she appeals, arguing that fundamental error occurred when the trial court failed to appoint conflict-free counsel to represent her at the motion to withdraw hearing. We conclude that the court did not err because no patent conflict was present.
Tommie was informed against for grand theft, which arose out of her use of two credit cards held by other persons. The state offered her a sentence of two years in prison, but Tommie declined. She then changed her plea to guilty and at sentencing requested a sentence of probation. The court conducted the standard plea colloquy, including advising Tommie that the maximum sentence was five years. After hearing from the victims of the theft, the court sentenced her to four years in prison.
Shortly after the sentence was imposed, Tommie filed a motion to withdraw her plea pursuant to Florida Rule of Criminal Procedure 3.170(l). In the motion she claimed that she was told by her counsel, Barbara Wolfe, that her sentence could range from probation to prison, but she was not told that she could receive up to five years in prison. Had she been so informed, she would have accepted the state's offer instead of pleading to the court. The motion was filed by Wolfe.
At the hearing, Wolfe told the court that she had advised Tommie that she could receive prison, but did not tell her the maximum prison sentence. Tommie testified that when the state offered her two years, Wolfe said to her, "I tell you what let's go plea before the Judge and get a better deal." Tommie further stated that Wolfe "told me I could get two years or a lot of probation. . . . And, I say well how much probation and she say, I can't promise you how much probation but if he gives you probation it's going to be a lot." When the state asked Tommie if she thought she could get more than two years in prison if she pled guilty, Tommie responded, "I really don't know." When asked a second time, Tommie answered that she did not think she could get more than two years: "I figured it was either the two years or a lot of probation."
Wolfe also testified and admitted that she did not inform Tommie of the maximum possible prison sentence. During Wolfe's direct examination, Wolfe testified:
I did not specify what her sentence could be, the limits of her sentence but I *635 did tell her she could get a prison sentence. I didn't specify what itwhat it could be. I did tell her that it would be up to the court and that if she did plea to the court there were no guarantees of what would happen.
After the direct examination, Wolfe stated:
I do feel some responsibility for not having advised my client better in this matter. We didn't discuss that she could have gotten up to five years in prison. I never specifically gave her that information. And, I believe it did effect [sic] her decision to take a chance and plead up to the court. And, if she had been fully informed about the maximum sentence that she could have received, it may have effected [sic] her decision about whether or not to accept the State's offer.
After hearing the evidence, the trial court concluded that Tommie "pled to four third degree felonies with maximum penalties of five years. She was informed of this fact by the Judge before her plea. She said she understood that and that she was not promised anything in order to get her to plea." Accordingly, the court denied her motion to withdraw her plea. This appeal follows.
It is well-established that a criminal defendant facing incarceration has a right to effective assistance of counsel at every critical stage of the proceedings against him or her. Padgett v. State, 743 So.2d 70, 72 (Fla. 4th DCA 1999). A hearing on a 3.170(l) motion to withdraw a plea after sentencing is a critical stage of the proceedings. Id. at 72-73. If it becomes apparent during a hearing on a motion to withdraw that counsel and the client are taking opposing and thus adversarial positions, it is incumbent on the court to provide the defendant with conflict-free counsel. Id. at 73. See also Iaconetti v. State, 869 So.2d 695, 699-700 (Fla. 2d DCA 2004); Garcia v. State, 846 So.2d 660, 661 (Fla. 2d DCA 2003) ("Once it became clear that Garcia and his counsel had adversarial positions concerning what actually happened while counsel was advising Garcia concerning the plea, Garcia was entitled to conflict-free counsel.").
Tommie claims that the court committed fundamental error by failing to appoint conflict-free counsel for her at the hearing because she and her counsel took adversarial positions as to Wolfe's advice to her. However, we do not find that there was any apparent conflict between Wolfe's testimony and Tommie's testimony. Wolfe admitted that she never told Tommie how much time she could serve in prisonher maximum sentence. Tommie testified that she believed that her sentence could be two years or probation, but she did not know if she could get more than that. The testimony is consistent, because Tommie claimed that she did not know she could get more than two years, and Wolfe admitted that she did not tell her how much time she could serve.
In Smith v. State, 845 So.2d 937 (Fla. 5th DCA 2003), the Fifth District found a conflict between the defendant and counsel where Smith testified during an evidentiary hearing that he did not understand the severity of this case or the harshness of his sentence, and his counsel testified that he felt Smith was fully advised as to what he was doing. The court held that "once it became clear that Smith and his attorney had taken adversarial positions concerning the advice Smith had received concerning his plea, Smith should have been afforded the opportunity to have the benefit of conflict-free counsel to present his position." Id. at 938.
The Fifth District clarified Smith in Carmona v. State, 873 So.2d 348 (Fla. 5th DCA 2004), and explained that when a *636 patent conflict of interest arises between counsel and client in a motion to withdraw proceeding, the court has a duty to offer the client conflict-free counsel. "It is only when conflict becomes obvious . . . that the trial judge is obligated to intervene into the attorney-client relationship to offer conflict [free] counsel." Id. at 350.
Here, we cannot say that there was any obvious conflict between counsel and Tommie. Instead, it appears that Wolfe was supporting her client and admitted that she may have been ineffective in failing to fully inform her client of the sentencing possibilities and that misinformation did occur. Despite this admission, the trial court determined that prior to taking the plea, the court itself had informed Tommie of the sentencing maximum, and she stated that she understood. Thus, after hearing the evidence from Tommie and her counsel as well as a review of the plea hearing, the trial court found that Tommie was aware that she could be sentenced to five years, and she was only sentenced to four. Thus, any deficiency in counsel's advice was cleared up by the information the court provided during the plea colloquy. See Bond v. State, 695 So.2d 778 (Fla. 1st DCA 1997).
Because no obvious conflict was apparent between counsel and defendant, the court did not fundamentally err in failing to appoint conflict-free counsel. Because there was competent, substantial evidence supporting the trial court's ruling after a full evidentiary hearing, we affirm.
Affirmed.
STEVENSON, C.J., and TAYLOR, J., concur.